Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

# UNITED STATES DISTRICT COURT

for the

9th District of Wisconsin

Civil Rights Division

| | | |
|---|---|---|
| Laura Christine Bravick | ) | Case No. 20-cv-1001-wmc |
| *Plaintiff(s)* | ) | *(to be filled in by the Clerk's Office)* |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) ) ) ) | Jury Trial: *(check one)* ☐ Yes ☒ No |
| -v- | ) | |
| Brian Knoll, Jennifer Graham, Brian Brooks, Justin Kline, Kent Lepak, J.Anderson, Kyle Sadogierski, Kyle Jolin | ) ) ) ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)* | ) | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

---

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

---

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

## I.   The Parties to This Complaint

### A.   The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint.  Attach additional pages if needed.

| | | | |
|---|---|---|---|
| Name | Laura Bravick | | |
| Address | 1791 Park Ave Apt 8 | | |
| | Plover | WI | 54467 |
| | *City* | *State* | *Zip Code* |
| County | Portage | | |
| Telephone Number | 715-570-8676 | | |
| E-Mail Address | lbravick@yahoo.com | | |

### B.   The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation.  For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both.  Attach additional pages if needed.

Defendant No. 1

| | | | |
|---|---|---|---|
| Name | Brian Knoll | | |
| Job or Title *(if known)* | Detective - Village of Plover | | |
| Address | 2420 Post Road | | |
| | Plover | WI | 54467 |
| | *City* | *State* | *Zip Code* |
| County | Portage | | |
| Telephone Number | 715-345-5255 | | |
| E-Mail Address *(if known)* | | | |

☐ Individual capacity   ☒ Official capacity

Defendant No. 2

| | | | |
|---|---|---|---|
| Name | Jennifer Graham | | |
| Job or Title *(if known)* | Detective - Village of Plover | | |
| Address | 2420 Post Road | | |
| | Plover | WI | 54467 |
| | *City* | *State* | *Zip Code* |
| County | Portage | | |
| Telephone Number | 715-345-5255 | | |

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

|  | E-Mail Address *(if known)* | |
|---|---|---|

☐ Individual capacity   ☒ Official capacity

**Defendant No. 3**

| Name | J. Anderson | | |
|---|---|---|---|
| Job or Title *(if known)* | Officer | | |
| Address | 2420 Post Road | | |
| | Plover | WI | 54467 |
| | *City* | *State* | *Zip Code* |
| County | Portage | | |
| Telephone Number | 715-345-5255 | | |
| E-Mail Address *(if known)* | | | |

☐ Individual capacity   ☒ Official capacity

**Defendant No. 4**

| Name | Kyle Jolin | | |
|---|---|---|---|
| Job or Title *(if known)* | Officer | | |
| Address | 2420 Post Road | | |
| | Plover | WI | 54467 |
| | *City* | *State* | *Zip Code* |
| County | Portage | | |
| Telephone Number | 715-345-5255 | | |
| E-Mail Address *(if known)* | | | |

☐ Individual capacity   ☒ Official capacity

## II.   Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.   Are you bringing suit against *(check all that apply)*:

☐ Federal officials (a *Bivens* claim)

☒ State or local officials (a § 1983 claim)

B.   Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]."  42 U.S.C. § 1983.  If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

> Excessive force during an arrest, procurement of false testimony, illegal search and seizure, making perjurious or recklessly false statements in support of a warrant, refusal of reading Miranda rights, excessive force in illegal seizure, HIPAA violations, and refusal of medically necessary medications

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

> N/A

D.    Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

## III.    Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.    Where did the events giving rise to your claim(s) occur?

> 1791 Park Ave Apt 8 Plover, WI 54467, 3016 Sims Ave Stevens Point, WI 54481, 1500 Strongs Ave Stevens Point, WI 54481, 5409 Vern Holmes Dr. Stevens Point, WI 54481, 333 Pine Ridge Road Wausau, WI 54401

B.    What date and approximate time did the events giving rise to your claim(s) occur?

> 2/14/20, 3/8/20, 3/10/20, 3/11/20, 4/24/20, 5/28/20, 7/4/20, 10/9/20

C.    What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

Please see attached.

## IV.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

Emotional Trauma - Treated at Midwest Ketarmine Chicago, IL, Better Health Therapy Online, Medication therapy for PTSD through Aspirus Healthcare and Ascension Healthcare Stevens Point, WI

## V.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.

On 2/13/20, my ex-husband reported a physical assault of my daughter █████ Bravick, age 6, by the hands (and feet) of my ex-boyfriend, Kyle Sadogierski to the Stevens Point Police Department. Myself and my other daughter, B████ Harte, were witness to the assault and provided testimony, however because she was afraid to talk to a police officer with a gun and a bullet proof vest, but the case was not followed through with. I also explained the same person assaulted me throughout a 2.5-year relationship, however I was told it was "too late" to report the assault, even though the statute of limitations is 6 years. I was also pregnant at the time and being manipulated by my ex to terminate my pregnancy or he would "no longer speak or be with me". (Texts can prove this) While hospitalized with kidney stones 2/13-2/14, a Stevens Point police officer illegally asked my healthcare provider the status of my pregnancy, as my ex did not believe me since I was being seen for kidney stones. I am unsure if it was provided, however I did hear the request. While on vacation with my family I experienced a miscarriage due to stress. Soon after an electrical fire in my home occurred in my home. (3/8) I provided information to Det. Kent Lepak and Det Justin Kline. My ex had indicated previously that he would "torch" my house. When asking if arson could be a factor, I provided them with two possible suspects. One of the suspects was left off the police report in order to make it appear as though I was framing my ex-boyfriend (who is a member of the local fire department and a local EMT). I was notified of this lapse by Atty Robert Burell of AllState insurance when we met to determine the amount of my insurance payout after their investigation ruled the fire as electrical.

On 3/10 I was brought to Aspirus ER after a stabbing incident. I refused police notification because the person who brought me in was responsible, my younger daughter was also with us, and ultimately it had been an accident. The police were called anyway, and due to being heavily medicated on oxycodone, fentanyl, and Benadryl I do not recall the specifics of this interview. I do not recall the officer names because of no recollection of the interview. I was informed later that my testimony was not "credible" – I was transferred to Aspirus hospital and upon admission my physician was provided with the inaccurate information that "I stabbed myself" and again the police were brought in.

After a rough night of trying to sleep while heavily medicated I was interrupted by Detective Brian Knoll and Detective Jennifer Graham who began to interview me. These detectives provided intense pressure to give the response they wanted, even though they were aware that I was on oxycodone and Benadryl. I changed my story numerous times because, as I told them both, I was very tired and medicated, and just wanted to sleep. II provided my cell phone for the detectives to view on the basis that they would give it back, as I needed to call my mom to pick me up from the hospital. During this time, I was informed that I needed to be taken for a small procedure. I asked for my phone back to *call my mother* and it was handed back to me. When attempting to scroll to my mom's phone number, Detective Knoll violently ripped my phone from my hands with such strength that I was pulled out of bed. At that time, both Detective Knoll and Graham were pulling it from my hands causing my gown to fall to the grown. I asked numerous times if I could phone my attorney and was advised that I could not as I was "deleting evidence" from my phone. Nurses, security guards, and a social worker were called to my room. During this encounter the social worker asked if he could put the phone under lockdown until my procedure was complete and I obliged. Upon this compromise, Detective Knoll ran out of the room and down the hall with my phone. At that time Det. Knoll ran out of the room and down the hospital corridors. Security attempted to catch him but returned to my room indicating they could not. My phone has yet to be returned even though taken without warrant. My bagged clothing was also removed without notification or warrant.

During my procedure my mom spoke with the social worker under the guarantee that any information she provided would be confidential. She indicated she was worried that I may something that could upset others as I tend to "speak before I think", and therefore did not want me to be speaking to detectives without my attorney. She was assured her statements were confidential and he would make sure, that did not occur again. However, the information she provided was given to the detectives, which is a HIPAA violation, and a police report was filed in which they changed her words to state that she "believed I stabbed myself" and that I was a "danger to myself and others". She reached out to the local police, the social worker, and my·attorney to indicate those words were not said but was ignored. This false report was filed to obtain a 72-hour hold in a mental health unit. Prior to my transfer to the unit, I overheard this social worker again discussing my medical information the Officer Kyle Jolin, who was on duty, which is a HIPAA violation. A medical report was also filed indicating that I had removed my gown and I tried to leave the hospital. Once I was admitted to the mental health unit the psychiatrist indicated she did NOT believe I was a danger to myself or others, which contradicted police officer reports. I was released home upon her determination. I have the medical records from Ascension which contradict the claims of non-doctoral individuals in this case.

Once I returned home on 3/13, I determined that the local police department had entered my apartment without permission or warrant. My work laptop and my camera system were removed, again without warrant or permission, nor was I notified of their removal. My position through work was in healthcare and there were thousands of patient medical records that could be accessed from my work laptop, so my attorney made multiple attempts to get it returned to me due to HIPAA regulations to no avail. I was also informed during this time that the detectives had shared my healthcare information to not only my father, but my ex-boyfriend (who happens to work out of the same building as the officers involved in my case) and his attorney without my consent. Since my personal health information was shared with Mr. Sadogierski and his attorney, I was unable to obtain a restraining order against his abuse for myself or my children. Although, the hospital should not have released the information to the police to begin with, the decision to release the information also created a circumstance that could have resulted in a danger to myself and/or my children because of this exposed information nullified my ability to obtain an order of protection.

Once the laptop was returned, my employer terminated me due to the possible exposure of patient health records to unauthorized representatives. My phone and cameras have not yet returned to me. The officers indicated they did not need a warrant because I was "not being charged with a crime." I filed a complaint with the chief of police on 3/16/20. Approximately the end of that month I received a response for my complaint in the form of a charge of "obstructing an officer" even though I was told my belongings were allowed to be taken without warrant because I was "NOT being charged with a crime."

I obtained both a civil and criminal attorney to review these charges, and upon the realization of that, I had two officers come to my home on both 4/22 and 4/23 to "give me my phone back." I had been suffering from post-traumatic stress disorder and had not left my house since discharge from Ascension Behavioral Health. I reached my hand out of the door to take my phone when, officer Kyle Jolin pushed open the door and aggressively pulled me from my house causing bruises on my wrists (I have video of this arrest). Once he placed me in the car I asked if he was going to read me my rights and he indicated that he was NOT going to because he "didn't want me to know what I was being charged with" while he laughed.

Upon entering the jail, I asked if I would be given my medications as I was on a benzodiazepine for my PTSD diagnosis and the abrupt stoppage could cause extreme anxiety and heart arrythmias, which could lead to a possible death. I was informed that they did not have it, but I could call my mom again in a "half-hour" (this was around 6pm). At each round of check-ins, I requested that call to my mom and was denied, until 11:30pm when I was informed it was now "too late to call her". At this point I was already feeling the anxiety of medication withdrawal and I was extremely concerned. I had dealt with heart issues in my past health history to the point of being hospitalized one year prior. I asked the correctional officer if she could google the consequences of benzopyrene withdrawal, and she replied that I "couldn't be going through withdrawal" because it "hadn't even been 24 hours." I believe she did eventually research the consequences as at approximately 4 am I was given the opportunity to take a blood pressure medication to assist with withdrawal. Of course, it wasn't the medication that I needed, but I did accept.

During my bond hearing I was informed that I was being charged with arson and stalking my ex-boyfriend, but both charges indicated a date of 2/1/20, when Mr. Sadogierski and I were still dating. Also, the fire occurred on 3/8. I believe these dates needed to be that early due to a child abuse claim that was filed on 2/14 by my ex-husband after he had been informed about a shoving and hitting incident of our 6-year-old daughter by Mr. Sadogierski. It was necessary that the charges filed by the police be prior to the allegations of my ex-husband to justify a lack of investigation to the abuse, including the ignorance of multiple witnesses of the vent.

On 5/8 the arson charge was dropped for "no probable cause" at the pre-trial by the judge. Upon this dismissal, conveniently my ex (Mr. Sadogierski) indicated that he had received a text message from me on 5/28. Officer Anderson of the Plover police department ran into Mr. Sadogierski while they were working together and reached out to discuss this text. He reached out to me via phone to question me. I informed him that after my break-up ALL of my social media, Apple ID, phone, etc. had been compromised and that I was certain that I had not sent it. I expressed this text could have been due to the previously noted compromised Apple ID account. I verified this information on my cell phone bill as it shows all texts messages to and from my phone and the date they occurred. Officer Anderson asked me to meet him and prove it by showing him my phone. I stated that I needed to speak with my attorney, Jonathon Barnett, prior to meeting with him. During conversation with Attorney Barnett, he expressed his concern over Officer Anderson's call because he had filed the necessary documentation required to establish him as my representation with the court system over a month earlier, and therefore I should not have been contacted to discuss this matter without first consulting him. Attorney Barnett proceeded to send an email to the DA and Office Anderson about the lack of ethics that had occurred in the ignorance of my attorney representation.

While obtaining documents that my attorney requested for on-going hearings, I determined that Mr. Sadogierski had been contacting my 15-year-old daughter (who was 14 at the time). I was suspicious of why this was occurring but found myself confused on whether to speak with her or review in regard to my concerns over his contact with her. Ultimately, I did make the decision to look at the contents of my daughter's phone in July of 2020. I was disheartened to find that he had sent sexually explicit messages and photos. (These can be provided) I was unsure of how to proceed due to the situation, so I consulted with Attorney Barnett as I did not feel comfortable contacting the police because of the lack of investigation done previously. He advised that he understood my concern and jointly we decided to leave my daughter out of any and all circumstances that would require her to testify. Shortly after this discussion Attorney Barnett left private practice and I retained Attorney Peter Prusinski.

I received new charges in the beginning of July 2020 for two counts of bond-jumping and a motion from the state to reinstate the previously dismissed arson charge. One bond jumping was issued was because of the text discussed in the prior paragraph, and another because Mr. Sadogierski had made a claim that his parents had a letter dropped off at their home, apparently by me, within the dates of June 16-June 22. During this time, I was extremely ill with food poisoning and my 15-year-old daughter was home as witness of the time until 6/20, when I immediately drove to sturgeon bay to be with my family was always with me. I was also able to provider phone GPS verifying that I had not been near Mr. Sadogierski or his parents' home. Since my Mr. Sadogierski was cleared of the fire in my home based on his phone GPS, I believed mine would also be sufficient. I was later informed that although Mr. Sadogierski's phone GPS was able to clear him, I would not be provided with the same standards and I could not be cleared by phone GPS.

On July 4 my 15-year-old daughter and her boyfriend were sitting on the roof of my home when THREE officers showed up from the Plover police department because of "suspicious activity". Being a small-town and a day where there was high risk of events requiring police presence it did not seem necessary to have most of the police department responding to a call of two kids sitting on a roof. These officers proceeded to interview both children them without parental consent. I found this very coincidental as I had informed my attorney of the messages sent to my daughter by Mr. Sadogierski not long prior to the police visit claiming her behavior to be "suspicious".

As previously mentioned, I had to obtain new attorney representation during this time and during the process of my search I had informed ADA Hodges that I was without an attorney and needed to change hearing dates. Coincidentally during this time my laptop and camera security system was stolen from my home. I did not report this as I did not trust the validity of their willingness to research of the stolen items. Once retained Atorney Prusinksi also advised that I do not report it.

Attorney Prusinksi and I also discussed the sexually explicit messages by Mr. Sadogierski to my daughter and my concern that an assault may have occurred by him to her. I reached this conclusion because my daughter began hating Mr. Sadogierski approximately 1.5 years earlier and she had advised a family friend that she needed to move in with her dad because Mr. Sadogierski had made her "uncomfortable". I also informed him that after speaking with my daughter regarding the messages, she informed me that she had been dealing with major depression for the last year and a half" and was having difficulty with her daily activities. I opted to get her set up with a psychiatrist *prior to proceeding* with how to handle these messages and how they attributed to her mental health struggles. However, Attorney Prusinski implied that if I did not report it, I could be held accountable for concealing a crime or withholding evidence and upon their discussion with my daughter, the validity of the claim would be proven.

Due to my concern over how to report the information without compromising myself or my daughter, I made the choice to report the information to a Detective out of Portage, WI (Detective Peter Warning) as one of Mr. Sadogierski's employers were in their jurisdiction  and it was likely that Mr. Sadogierski sent the sexual messages to my daughter during his work hours. Detective Warning researched and determined that although he believed a crime was committed, he did not have jurisdiction and he I passed the information to Lt. Brian Brooks of the Stevens Point Police Department.

I did not receive any follow-up from the SPPD until one week AFTER my arson charge was dropped again by another judge for no probable cause. Upon the dropping of the charge, Lt. Brooks and Detective Justin Kline of the SPPD interviewed my daughter about the messages sent to her by Mr. Sadogierski. Again, she was interviewed without parental supervision and had indicated that the inappropriate messages were from Mr. Sadiogierski, but she didn't really remember them because it was "a long time ago", and that Mr. Sadogierski had not assaulted her. The officers continued to press her until she implied that I reported these messages to retaliate against Mr. Sadogierski and convinced her to say that Mr. Sadogierski had not sent those messages because I had sent the messages between herself and Kyle. They also made her believe that I was the cause of her mental health struggles and I had wanted to bring her into this to get the retaliation they believed I wanted against Mr. Sadogierski.

Not long after her interview, Det. Kline and Lt. Brooks came to my home without first consulting me Attorney (AGAIN). I informed them that an email had been sent to the DA indicating that it was severely unethical to continue to approach me without first consulting my attorney, but they continued on and informed me that they would be filing charges for a false police report. Prior to the arson motion hearing, I had deactivated my social media and email accounts to avoid compromising any of those accounts. Unfortunately, I realized that on many occasions they were being reactivated. I did not research or pursue those compromised accounts until I was informed by Det. Kline and Brooks that an email had been sent to Mr. Sadogierski informing him of ALL of the research I had done for my case and the allegations against him, which was not allowed because of my bond.  I have requested and obtained information from my email provider on all of the requests I submitted to deactivate the accounts, and where and how all of my accounts were accessed which can prove my lack of involvement.

During my visit from Kline and Brooks, they informed me that they had validated the email by having my ex-husband send an email to me. I did not respond to the email, but I did speak to my ex-husband about it. However, I never denied the account being my email address, I just informed them that I no longer use that account and had tried numerous times to deactivate it. I also was willing to provide documentation that an email had NOT been sent from that account after 3/2020 and indicated that they would need to speak with my attorney for any further discussion.

After this visit I placed a call to my daughter who was extremely upset. She had been told by the officers that I was trying to bring her into this investigation with my lies and that is why she said the things that she did. She was unaware that she was my alibi for the letter my exes' parents received and because of my desire to NOT involve her into these charges I had yet to have my attorney speak with her about it. She felt terrible that she believed what she was told by Kline and Brooks and asked if she could call Detective Kline to tell him she was with me, and the messages were from Mr. Sadogierski but she did not want to confirm them because she did not want to be involved. I informed her that I did NOT want her to speak with anyone except Attorney Pursinski and it was unnecessary for her to call.

Once speaking with my daughter, I spoke with Attorney Prusinski on how to proceed. He stated that I would need to determine if there was an arrest warrant, and if so, I needed to turn myself in. While speaking with Det. Kline he informed me that there was NOT a warrant. I proceeded to ask if we could set up a time for my daughter to speak with him with attorney representation. He informed me that they would NOT speak to her again as they had the information they needed. I indicated she wanted to recant her testimony about this being my fault and wanted to show him her phone with the verified inappropriate messages sent by Mr. Sadogierski. I refused to continue the conversation with Det. Kline and have not initiated any further conversation.

I am greatly concerned that even after all the documented illegal behavior by the accused, they are still unwilling to provide the same courtesy of "innocence until proven guilty" that was awarded to all other members of the community. This is proven in all of the above documentation, and by the officer claim that all searches and text messages that were used to validate the charges filed against me HAD to have been sent by me because no one else had access to my accounts. Since there was never an investigation into the allegations of my accounts being compromised, there is no way to determine that they were not compromised. However, because Mr. Sadogierski has not been investigated for the very real messages that were sent to my daughter over 1.5 years ago. If my accounts were unable to be accessed by anyone but me because I was the ONLY one with access, then the text messages to my daughter had to be sent by Mr. Sadogierski because he was the ONLY one with access.

In order to file a charge against me for filing a false police report, it would have to be proven that Mr. Sadogierski had **not** sent the messages to my daughter and that I had accessed both my daughter and Mr. Sadogierski's accounts to create the messages between them. Further information also indicates that the social media app where these messages were transpired can only be used on a phone. That means in order to create any messages between them would require me to have accessed BOTH phones without their knowledge, taking screenshots of these messages 1.5 years ago (the messages are timestamped), and then saving them until July of 2020 to use them to file a false report.  The implication is that I was the ONLY person that could have sent texts or emails from my accounts that resulted in my numerous criminal charges against me, yet Mr. Sadogierski is **not** the only responsible party that could have accessed his accounts. In order to achieve the same treatment by law enforcement, Mr. Sadogierski should be held to the same standards.  If I was the ONLY ONE capable of sending texts, emails and searches on MY phone then Mr. Sadogierski and my daughter were the ONLY individuals that were able to access their accounts. I understand why it may be assumed that I had access to my daughter's account, however for these messages to occur, it would have also been necessary for me to also have access to Mr. Sadogierski's phone. It is the very bias opinion of these police officers that caused them to claim that I had access to Mr. Sadogierski's phone to place false messages between him and my daughter.

I am filing a claim for the multiple times my home was entered without warrant, the items that were removed from both my hands and my house without warrant, the loss of my employment due to the removal of my work laptop without warrant or consent, the continual contacting of me without first consulting my attorney, the times my daughter was spoken to without parental consent, the refusal to obtain a social worker or child counselor to investigate the assault to my younger daughter, the indication that it was too late to investigate the assault to myself, the false police reports resulting in a 72-hour mental health hold, the assault from Det. Knoll and Graham in stealing my phone, the assault by Officer Jolin during my arrest, the withholding of my medications while in jail, the continual arson charge even though insurance investigation indicated an electrical fire, and Detective Lepak indicating they were unable to find the source of the fire, the trauma surrounding the removal of my hospital gown during the illegal obtainment of my phone, the cost of the treatment of the trauma,  the HIPAA violations in giving out my patient health information, the inability to leave my home without fear or the ability to report crimes against me, the unwillingness of Det. Kline to allow my lawyer to recant her testimony, and the constant harassment from the Plover and Stevens Point Police Department to me and my family.

Possible Witnesses:

Sarah Pieczynski
Adelaide Pieczynski
Alexander Pieczynski
B█████ Hartle
Barry Hartle
David Felch
David Bravick
Attorney Robert Burrell for AllState
M█████ Bravick-Felch (underage, would need assistance with testimony)
Attorney Jared Redfield
Dr. Kristina Wettle (Licensed Psychiatrist Ascension Behavioral Health)
Private Investigator Scott Boehm
Attorney Jonathon Barnett
Attorney Peter Prusinski
Kelsey Griese
Cassi Jo Lepak, PA
Carol Rave, MD
Molly Hephner


Documents:
Wisconsin Rapids PP Medical Records
Ascension Medical Records
Aspirus Medical Records
Midwest Ketamine Medical Records
Allstate adjusters Giorgio Cecala and Ihor Redkva report
Attorney Robert Burrell for Allstate documentation
AT&T Phone records/text messages for 715-456-9199, 715-570-8676, 715-456-9907
Yahoo Emails, along with documentation of deactivation
Compromised Apple ID, Email, Amazon, phone, bank records, and social media account documentation
from providers
Health and Home Insurance documents
Complaint to chief-of-police
False police reports
Police reports that admit wrongdoing
GPS records

Videos/Voicemails/Pictures
Home Security footage relevant
Voice messages relevant
Facebook, Snapchat, text images/etc. messages relevant
Images from camera relevant

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non-Prisoner)

Reprimand of listed defendents
Punitive damages for following items:
Loss of Income - $10,800 through RSource (15 weeks x $18 an hour = $10,800), $3,360 through Wisconsin
Physician Services (6 weeks x $14 an hour = $3,360)
Criminal Attorney Jonathon Barnett 3/20-6/20 = $5,000
Civil Attorney Ben Cross 3/20-6/20 = $1,835
Criminal Attorney Peter Prusinski 7/20 - Present $5,000 (thus far, expected $5k - $10k additional)
Ketamine Infusion @ Midwest Ketamine = $1,500
Hotel fees for medical treatment = $500
Psychiatric treatment for myself and family = $2,000 (thus far)
Replacement of two phones and security system taken during illegal seizure = $3,000
Aspirus Hospital Fees = $5,000
Ascension Hospital Fees = $4,000
Pain and Suffering = $18,000

TOTAL: $58,495

## VI.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information,
and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause
unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a
nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have
evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable
opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the
requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be
served. I understand that my failure to keep a current address on file with the Clerk's Office may result
in the dismissal of my case.

Date of signing:    | 10/29/2020

Signature of Plaintiff        _Laura Christine Bravick_
Printed Name of Plaintiff     | Laura Christine Bravick

### B.    For Attorneys

Date of signing:    |

Signature of Attorney
Printed Name of Attorney
Bar Number

Pro Se 15 (Rev. 12/16) Complaint for Violation of Civil Rights (Non–Prisoner)

| Name of Law Firm | |
| --- | --- |
| Address | |
| | City | State | Zip Code |
| Telephone Number | |
| E-mail Address | |